**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

<table>
<tr><td>

**ROBERT VOLIO, et al.,**

*Plaintiffs*,

v.

**SUGARHOUSE HSP GAMING, L.P. (d/b/a) RIVERS CASINO PHILADELPHIA, et al.,**

*Defendants*.

</td><td>

**Case No. 2:25-cv-00039-JDW**

</td></tr>
</table>

**MEMORANDUM**

In the modern world, our data is everywhere. Businesses collect it constantly, and they must do their best to protect it. Sometimes they fail because no defense is perfect. The failure could be because the business didn't do enough or because sophisticated hackers are sometimes one step ahead of even the most sophisticated cybersecurity defense. Data breaches attract attention and lawsuits, but a plaintiff can't plead a cause of action just based on the fact of a data breach. Many of the claims in this potential class action do that, either expressly or implicitly. I will not permit those claims to proceed. However, as I explain below, I conclude that the Plaintiffs in this case have stated a plausible negligence claim, so I will permit that claim to proceed.

## I.    BACKGROUND

Sugarhouse HSP Gaming, L.P. and Rush Street Gaming LLC own and operate Rivers Casino Philadelphia.[1] As part of its business operations, Rivers collects personally identifiable information from employees, casino patrons, and other individuals who interact or transact with it, including names, dates of birth, Social Security numbers, driver's license and passport information, and bank account information used for direct deposits.

In November 2024, Rivers discovered that an unauthorized actor had accessed its computer network and exfiltrated files containing PII. A ransomware group known as Cicada3301 claimed responsibility for the attack, asserted that it stole approximately 2.561 terabytes of data, and later published the stolen data on the dark web. Rivers notified affected individuals that their personal information may have been compromised.

The named Plaintiffs include current and former Rivers employees, as well as Rivers' patrons. They provided their PII to Rivers in connection with their employment or their patronage of the casino, and the compromised information included their own personal information. Following the incident, several Plaintiffs experienced fraudulent activity or attempted misuse of their information, including unauthorized credit inquiries, fraudulent charges, attempted access to online accounts, and phishing communications. For example:

---

[1] Throughout this opinion, I'm going to refer to Defendants as "Rivers."

- An individual attempted to access Kevin Brady's Wells Fargo account after the data breach, prompting him to change his username and password and monitor his financial accounts and credit reports;

- Shawn Martin experienced a substantial increase in spam calls, emails, and text messages, and has spent time monitoring his financial accounts and credit reports;

- Robert Volio verified the authenticity of the breach notification, monitored his financial accounts and credit reports, and visited Rivers Casino to obtain additional information about the data breach;

- Unauthorized actors attempted to access Casey Tierney's Apple account, causing him to abandon an email account because of persistent spam communications and to change usernames and passwords associated with his bank accounts, credit cards, and other online accounts;

- Fraudulent credit inquiries were made using Aniello Barrella's information, that he contacted financial institutions and monitored his accounts following the data breach, and that he purchased credit-monitoring services for which he continues to incur a monthly expense; and

- Unauthorized Peacock subscription charges appeared on Mark Metzler's Wells Fargo credit card after the data breach, prompting him to update

payment information across his online accounts and monitor his financial accounts and credit reports.

Plaintiffs also face an ongoing risk of identity theft and fraud resulting from the exposure of their information.

Based on those allegations, Plaintiffs assert claims for negligence, negligence *per se*, breach of implied contract, breach of confidence, invasion of privacy, breach of fiduciary duty, unjust enrichment, and requests for declaratory and injunctive relief. Rivers moves to dismiss all claims under Rule 12(b)(6). The motion is ripe for disposition.

## II.    LEGAL STANDARD

A district court may dismiss a complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Rather than require detailed pleadings, the "Rules demand only a short and plain statement of the claim showing that the pleader is entitled to relief[.]" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (quotation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (same). In determining whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Id.* at 786-87 (same). First, the court must identify the elements needed to set forth a particular claim. *Id.* at 787. Second, the court should identify conclusory allegations, such as legal conclusions, that are not entitled to the presumption of truth. *Id.* Third, with respect to well-pleaded factual allegations, the court

should accept those allegations as true and "determine whether they plausibly give rise to an entitlement to relief." *Id.* (quotation omitted). The court must "construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them." *Id.* at 790 (citation omitted).

## III.    ANALYSIS

### A.    Negligence

To state a negligence claim under Pennsylvania law, a plaintiff must allege that "(1) the defendant owed the plaintiff a duty or obligation recognized by law; (2) the defendant breached that duty; (3) a causal connection existed between the defendant's conduct and the resulting injury; and (4) actual damages occurred." *Grove v. Port Auth. of Allegheny Cnty.*, 218 A.3d 877, 889 (Pa. 2019). Rivers focuses its challenge on causation and damages rather than duty and breach. Its emphasis is understandable because *Dittman v. UPMC* largely resolves the question of duty. 196 A.3d 1036, 1047 (Pa. 2018). Under *Dittman*, an entity that collects and stores sensitive personal information owes a duty to exercise reasonable care in protecting that information from the foreseeable risk of a data breach. *Id.*; *see also In re Wawa, Inc. Data Security Litigation*, No. 19-6019, 2021 WL 1818494, at *5 (E.D. Pa. May 6, 2021). Rivers argues that Plaintiffs have not plausibly alleged that the breach caused their injuries and that, even if it did, the injuries they identify are not recoverable under Pennsylvania negligence law. Neither argument persuades me.

### 1.    Causation

Under Pennsylvania law, causation for negligence requires a showing that the breach of the defendant's duty was both the actual and proximate cause of the plaintiff's injury. *Eckroth v. Penn. Elec., Inc.*, 12 A.3d 422, 427 (Pa. Super. 2010). Actual cause is the equivalent of "but for" causation. *Kalgren v. Huber*, No. CIV A 32005-7, 2007 WL 674605, at *4 (W.D. Pa. Mar. 1, 2007) (citing *Summers v. Giant Food Stores, Inc.*, 743 A.2d 498, 509 (Pa. Super. 1999)). "Proximate causation is defined as a wrongful act which was a substantial factor in bringing about the plaintiff's harm." *Eckroth*, 12 A.3d at 428 (citation omitted). The relevant inquiry for proximate causation is whether "the alleged negligence was so remote that as a matter of law, the defendant cannot be held legally responsible for the subsequent harm." *Id.* (citation omitted).

According to the Consolidated Amended Complaint ("CAC"), the compromised information included Social Security numbers, bank account information, driver's license numbers, passport information, and other sensitive personal information. Several named Plaintiffs then experienced misuse of the same categories of information Rivers allegedly failed to protect. Ms. Barrella alleges unauthorized credit inquiries and that she purchased credit-monitoring services in response to the breach. Mr. Metzler alleges fraudulent charges to his Peacock account. Other Plaintiffs likewise allege phishing attempts, increased spam communications, or other suspicious activity affecting information compromised in the data breach.

In addition, the CAC alleges that the very categories of information Rivers failed to protect were later used in the fraudulent activity they experienced. Taken together, those allegations permit the reasonable inference that Rivers' alleged negligence was a substantial factor in producing the injuries Plaintiffs identify. At this stage, those allegations are enough to plead both actual and proximate causation. That conclusion is consistent with *Opris v. Sincera Reproductive Medicine*, a case in which the court held that allegations that plaintiffs entrusted their personal information to the defendant, the information was compromised in a data breach, and the plaintiffs thereafter faced misuse of that information were sufficient to plead causation at the motion to dismiss stage. 2022 WL 1639417, at *6 (E.D. Pa. May 24, 2022).

Rivers argues that Plaintiffs cannot satisfy either the actual or proximate cause requirements because phishing emails, fraudulent charges, suspicious login attempts, and spam communications are common occurrences that could have resulted from any number of unrelated events. If the CAC alleged only that those events happened sometime after the breach, Rivers' argument would have considerable force. But that is not what Plaintiffs allege. And what they do allege is enough to create at least a reasonable inference of causation.

### 2.    Damages

Plaintiffs allege that they incurred present costs responding to the breach. They claim that they spent time monitoring financial accounts, changing passwords, placing

fraud alerts and credit freezes, communicating with financial institutions, and taking other steps to reduce the risk of identity theft. Ms. Barrella also alleges that she purchased credit monitoring services after learning of the breach. The CAC also alleges that several named Plaintiffs experienced actual misuse of their information following the data breach, including fraudulent credit inquiries, unauthorized charges, attempted account access, and phishing activity. Those allegations plead cognizable damages at this stage.

Courts applying Pennsylvania law in the data breach context have recognized that time and expenses incurred monitoring financial accounts, purchasing identity protection services, placing credit freezes, and otherwise responding to the risk of identity theft are cognizable damages in negligence actions. *See Opris*, 2022 WL 1639417, at *7; *Roma v. MedStar Health, Inc.*, No. 23-1842, 2024 WL 3678984, at *9 (D. Md. Aug. 6, 2024); *Tignor v. St. Luke's Health Network, Inc.*, 745 F. Supp. 3d 185, 203 (E.D. Pa. 2024). And, at least one court has held that allegations about the misuse of PII "are sufficient to satisfy the damages prong of Plaintiffs' negligence claim at this stage." *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. 19-2904, 2021 WL 5937742, at *16 (D.N.J. Dec. 16, 2021).

Although Rivers challenges many of the categories of damages that Plaintiffs posit, I need not decide whether every theory of damages that Plaintiffs advance is independently cognizable because the CAC alleges injuries that are sufficient even if some of those theories ultimately fail. In addition, while Rivers correctly notes that Article III

standing and the damages element of a negligence claim are distinct inquiries, Plaintiffs do not rely solely on the possibility that someone might misuse their information at some point in the future. They allege that the breach has already required them to expend time and money protecting themselves and that several Plaintiffs have already experienced misuse of the information that Rivers allegedly failed to protect. Because those allegations suffice to plead cognizable damages, I need not decide at this stage whether Plaintiffs' remaining damages theories are independently recoverable. *See In re American Medical Collection Agency, Inc. Customer Data Security Breach Litigation*, 2021 WL 5937742, at *16 n.29.

### B.     Negligence *Per Se*

The CAC asserts a separate claim for negligence *per se*. But negligence *per se* is not an independent cause of action, it's an "evidentiary presumption that, if established, constitutes proof of a breach of duty." *Simmons v. Simpson House, Inc.*, 224 F. Supp.3d 406, 413 (E.D. Pa. 2016). As at least one Pennsylvania court has explained, the "concept of negligence per se establishes the elements of duty and breach" of a negligence claim." *Schemberg v. Smicherko*, 85 A.3d 1071, 1074 (Pa. Super. 2014). Because negligence *per se* isn't an independent claim, I'll dismiss this claim, and I won't reach whether the FTC Act can form the statutory basis for negligence *per se*. The Parties can revisit that question later in the case in connection with the negligence claim.

### C.      Breach Of Implied Contract

To plead a breach of contract, a plaintiff must plead "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Meyer, Darragh, Buckler, Bebenk & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016). An implied contract has the same essential elements as an express contract, but courts infer the obligation from acts in light of the surrounding circumstances. *See Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 659 (Pa. 2009). Plaintiffs' claim fails at the first step because the CAC does not plausibly allege the existence of an agreement.

Plaintiffs' allegations identify an expectation, not an agreement. An implied contract arises only when the parties' objective conduct, viewed in light of the surrounding circumstances, manifests mutual assent to the obligation one party later seeks to enforce. *See Liss & Marion*, 983 A.2d at 659. The CAC does not plausibly allege such mutual assent. Rivers' collection and retention of Plaintiffs' personal information explain why it possessed that information, but it does not objectively manifest an agreement to undertake a contractual obligation governing how it would protect that information.

Rivers's Privacy Policy does not bridge that gap. Although Plaintiffs rely on the Policy as evidence that Rivers appreciated the sensitivity of the personal information it collected, the Policy itself undermines the contractual promise Plaintiffs seek to infer. It states that Rivers employs commercially reasonable security measures, but it also provides

10

that Rivers does "not promise or guarantee" that personal information "will always remain private or secure" does "not guarantee" that information "will not be misused by third parties," and that users "agree that [Rivers] will not have any liability for misuse, access, acquisition, deletion, or disclosure" of their information. (ECF No. 36-1 at 11; ECF No. 36-2 at 10.) A document disclaiming any guarantee of security cannot simultaneously serve as the objective manifestation of assent to the contractual promise Plaintiffs seek to enforce.

Nor does Plaintiffs' reliance on industry standards and regulatory guidance alter that conclusion. Those standards might inform what reasonable care requires in a negligence action, but they do not establish the existence of a contract. An implied contract still requires mutual assent, and mutual assent must arise from the parties' intent and conduct, not from legal obligations or expectations that arise based on industry practice. *See Elias v. Elias*, 428 Pa. 159, 161 (1968); *In re Am. Fin. Res., Inc. Data Breach Litig*, No. 22-201757, 2023 WL 3963804, at *8 (D.N.J. Mar. 29, 2023). Accepting Plaintiffs' theory would effectively mean that every business requiring customers or employees to provide personal information implicitly contracts to safeguard that information, regardless of whether the business ever manifested an intent to undertake such an obligation. That is not how Pennsylvania recognizes implied contracts. *Dittman*, 2017 WL 117652, at *5; *Enslin v. Coca-Cola Co.*, No. 2:14-CV-06476, 2017 WL 1190979 (E.D. Pa. Mar. 31, 2017).

Plaintiffs may well have expected Rivers to employ reasonable measures to protect their personal information. That expectation is understandable. But a reasonable expectation, without more, is not a contractual promise. Because the CAC does not plausibly allege objective conduct from which I can infer that the parties mutually assented to a contractual obligation requiring Rivers to safeguard Plaintiffs' personal information, Plaintiffs fail to state a claim for breach of implied contract.

### D.    Breach Of Fiduciary Duty

When no fiduciary duty exists as a matter of law, fiduciary duties may arise from a confidential relationship in "circumstances where the relative position of the parties is such that the one has the power and means to take advantage of, or exercise undue influence over, the other." *Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 820 (Pa. 2017). Whether duties arise in such circumstances is fact specific, and they "appear[ ] when the circumstances make it certain the parties do not deal on equal terms, but, on the one side, there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed." *Id.* at 820-21. Critically, this relationship must go "beyond mere reliance on superior skill, and into a relationship characterized by 'overmastering influence' " through which the relying party cedes decision-making control. *Id.* at 823.

Nothing in the CAC plausibly alleges that kind of relationship. Plaintiffs allege that Rivers collected and retained their personal information and that they relied on Rivers to safeguard the information from unauthorized disclosure. Those allegations do not

establish that Rivers exercised the sort of overmastering influence that gives rise to fiduciary obligations. Plaintiffs do not allege that Rivers deprived them of decision-making authority regarding their personal affairs or exercised dominion over their interests. At most, Plaintiffs entrusted Rivers with information that Rivers required to employ them or to provide casino-related services. In *Yenchi*, the Pennsylvania Supreme Court held that's not enough to create a fiduciary relationship.

Plaintiffs argue that Rivers occupied a superior position because it exclusively controlled Plaintiffs' personal information and possessed greater knowledge regarding cybersecurity practices. But that rationale sweeps too broadly. Every employer, retailer, hospital, bank, or business that collects personal information necessarily controls the storage of that information and almost always possesses greater expertise regarding its security than the individuals who provide it. If those facts alone created a fiduciary relationship, virtually every entity that collected personal information would owe fiduciary duties to its customers and employees. I'm aware of no Pennsylvania authority embracing such an expansive rule, and I decline Plaintiffs' invitation to predict that the Pennsylvania Supreme Court would do so.

### E.    Breach Of Confidence

Breach of confidence involves "the unconsented, unprivileged disclosure to a third party of nonpublic information that the defendant has learned within a confidential relationship." *Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 114 (3d Cir. 2019) (quoting Alan B.

Vickery, Note, *Breach of Confidence: An Emerging Tort*, 82 Colum. L. Rev. 1426, 1455 (1982)). The Pennsylvania Supreme Court has held that a "confidential relationship" exists when one party has "'reposed a special confidence in ... another to the extent that the parties do not deal with each other on equal terms.'" *Harold ex rel. Harold v. McGann*, 406 F. Supp. 2d 562, 571 (E.D. Pa. 2005) (quoting *In re Clark's Estate*, 467 Pa. 628, 359 A.2d 777, 781 (1976)). This occurs when there is an "overmastering dominance on one side, or weakness, dependence or justifiable trust, on the other." *Id.* A business association may be the basis of a confidential relationship "only if one party surrenders substantial control over some portion of his affairs to the other." *Id.* (quoting *In re Scott's Estate*, 455 Pa. 429, 316 A.2d 883, 886 (1974)).

The CAC does not plausibly allege the existence of the confidential relationship that gives rise to the duty Plaintiffs seek to enforce. Plaintiffs argue that such a relationship exists because Rivers operates in a heavily regulated industry, because casino employees must disclose extensive personal information as part of the licensing process, and because certain Pennsylvania gaming regulations require Rivers to maintain the confidentiality of patron information. Those allegations do not distinguish this case from the ordinary employment and commercial relationships that Pennsylvania courts routinely decline to treat as confidential relationships. *See eToll, Inc. v. Elias/Savion Adver.*, Inc., 811 A.2d 10, 23 (Pa. Super. Ct. 2002). The patron Plaintiffs do not allege that Rivers acted as confidential advisers, exercised control over their affairs, or occupied a position of trust different from

14

that of any other business collecting customer information. Likewise, although casino employees must disclose sensitive information to obtain occupational licenses, mandatory disclosure requirements are a common feature of regulated employment. They do not transform every employer into the holder of a confidential relationship. *Yenchi*, 161 A.3d at 823.

Even if Plaintiffs had alleged a confidential relationship, however, their claim would fail for a more fundamental reason. Plaintiffs allege that Rivers failed to implement reasonable security measures, that cybercriminals infiltrated its systems, and that those third parties stole Plaintiffs' personal information. That theory sounds in negligence. It is not a breach of confidence claim. As the Third Circuit explained in *Kamal*, a breach of confidence requires "the unconsented, unprivileged disclosure" of confidential information. 918 F.3d at 114. Plaintiffs do not allege that Rivers intentionally disclosed their information, accidentally transmitted it to an unauthorized recipient, or otherwise affirmatively revealed it. They allege only that hackers gained unauthorized access because Rivers failed to secure its systems. Plaintiffs ask me to equate a failure to prevent a third-party theft with an affirmative disclosure. I decline to stretch the tort that far. Because the CAC does not plausibly allege either a confidential relationship or an affirmative disclosure of Plaintiffs' information, I will dismiss this claim.

F.        **Invasion Of Privacy**

"An action for invasion of privacy is comprised of four distinct torts: (1) intrusion upon seclusion, (2) appropriation of name or likeness, (3) publicity given to private life and (4) publicity placing the person in a false light." *Kline v. Sec. Guards, Inc.*, 386 F.3d 246, 259-60 (3d Cir. 2004) (citing *Harris v. Easton Publ'g Co.*, 483 A.2d 1377, 1383 (1984)). The CAC does not identify which privacy tort Plaintiffs intend to pursue. The allegations in Count V repeatedly invoke an "intrusion" into Plaintiffs' private affairs and therefore appear to plead intrusion upon seclusion. (ECF No. 14 at 63.) In their opposition brief, however, Plaintiffs emphasize the alleged disclosure of their PII on the dark web, suggesting that they may instead be pursuing a claim for publicity given to private life. (ECF No. 36-1 at 24-25.) Under either theory, the claim fails.

To make out a claim for intrusion upon seclusion, "a plaintiff must show that the intrusion was (1) intentional; (2) upon the solitude or seclusion of the plaintiff, or his private affairs or concerns; [ ] (3) substantial; and (4) highly offensive." *Pacitti v. Durr*, No. CIV.A. 05-317, 2008 WL 793875, at *25 (W.D. Pa. Mar. 24, 2008)(citing *Larsen v. Phila. Newspapers, Inc.*, 543 A.2d 1181, 1186-87 (Pa. Super. 1988), aff'd, 310 F. App'x 526 (3d Cir. 2009)).

The CAC does not plausibly allege that Rivers intruded upon Plaintiffs' private affairs. Instead, it repeatedly alleges that Rivers "failed to implement and maintain reasonable security procedures and practices" (ECF No. 14 at 50.) and so permitted

16

unauthorized third parties to access Plaintiffs' personal information. Those allegations describe, at most, a failure to prevent an intrusion by someone else. They do not plausibly allege that Rivers itself invaded Plaintiffs' privacy. As another court in this District explained, the intentional "configuring" of data-security systems "is not the conduct that must be proven to be intentional in an invasion of privacy claim." *Roma v. Prospect Med. Holdings, Inc.*, 2024 WL 3678984, at *13 (E.D. Pa. Aug. 6, 2024). Rather, "the defendant's state of mind with respect to the 'intru[sion]' is what matters." *Id.* (quoting *Kline*, 386 F.3d at 260).

Nor would Plaintiffs fare any better if I construed Count V as asserting the separate tort of publicity given to private life. To state such a claim, a plaintiff must allege "(1) publicity, given to (2) private facts, (3) which would be highly offensive to a reasonable person and (4) is not of legitimate concern to the public." *Harris*, 483 A.2d at 1384. Plaintiffs' claim fails at the outset because the CAC does not plausibly allege that Rivers gave publicity to Plaintiffs' private information. Rather, Plaintiffs allege that cybercriminals accessed Rivers' systems, exfiltrated Plaintiffs' PII, and later published that information on the dark web. Even accepting those allegations as true, it was the hackers, not Rivers, who gave publicity to that information. Thus, Plaintiffs fail to state a claim for invasion of privacy.

### G.      Unjust Enrichment

To state a claim for unjust enrichment, a plaintiff must allege that (1) she conferred a benefit to the defendant, (2) the defendant appreciated the benefit, and (3) it would be inequitable for the defendant not to pay for it. *Melmark, Inc. v. Schutt by and Through Schutt*, 206 A.3d 1096, 1110-11 (Pa. 2019).

The CAC identifies what Plaintiffs gave Rivers. But it does not identify the benefit Plaintiffs now seek to recover. The employee Plaintiffs allege that they provided labor in exchange for wages and, in doing so, provided personal information Rivers needed to administer payroll and other employment functions. The patron Plaintiffs allege that they spent money for gaming, food, beverages, entertainment, and participation in a rewards program. Plaintiffs now contend that Rivers was unjustly enriched because it retained those benefits while failing to devote sufficient resources to safeguarding Plaintiffs' personal information. But that theory conflates the benefit Plaintiffs conferred with the way Rivers chose to use it. The doctrine of unjust enrichment asks what benefit the plaintiff bestowed on the defendant such that the enrichment of the defendant is unjust. *See Schenck v. K.E. David, Ltd.*, 446 Pa.Super. 94, 666 A.2d 327, 328 (1995).  It does not ask whether the defendant's subsequent use of the benefit was appropriate or prudent. *See Dugan v. Towers, Perrin, Forster & Crosby, Inc.*, No. 2:09-CV-5099, 2012 WL 6194211, at *15 n.11 (E.D. Pa. Dec. 11, 2012).

In addition, Plaintiffs insist they need not identify a separate payment for cybersecurity because some portion of the money they paid Rivers necessarily should have funded reasonable data security measures. They also allege that they would have paid less or chosen another casino had they known Rivers's cybersecurity practices were inadequate. Those allegations might explain why Plaintiffs believe Rivers acted unfairly. They do not establish the benefit Plaintiffs conferred. The CAC does not allege that Plaintiffs paid Rivers for data security services, that Rivers charged a premium for safeguarding personal information, or that any identifiable portion of Plaintiffs' payments represented consideration for cybersecurity. Instead, Plaintiffs ask me to infer that every dollar paid to Rivers carried with it an obligation to spend some unspecified portion on data protection. The CAC offers no factual basis for drawing that inference.

Plaintiffs may ultimately prove that Rivers failed to exercise reasonable care in protecting their personal information. But that does not mean Rivers was unjustly enriched. Because Plaintiffs have not plausibly alleged that they conferred the benefit they now seek to recover, they fail to state a claim for unjust enrichment.

## H.    Declaratory/Injunctive Relief

The Declaratory Judgment Act permits a court to "declare the rights and other legal relations of any interested party." 28 U.S.C. § 2201(a). In deciding whether to entertain a declaratory judgment action, courts consider, among other things, "(1) the likelihood that a declaration will resolve the uncertainty of obligation which gave rise to the controversy;

(2) the convenience of the parties; (3) the public interest in a settlement of the uncertainty of obligation; and (4) the availability and relative convenience of other remedies." *Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213, 1224 (3d Cir. 1989). Courts generally decline to entertain declaratory judgment claims that merely duplicate substantive causes of action. *See In re Wawa, Inc. Data Sec. Litig.*, No. 19-6019, 2021 WL 1818494, at *8 (E.D. Pa. May 6, 2021). But where the declaratory judgment claim seeks prospective relief and the substantive claims have not yet been fully developed, dismissal at the pleading stage may unnecessarily limit the Court's ability to fashion appropriate equitable relief. *See Baker v. Deutschland GmbH*, 240 F. Supp. 3d 341, 350 (M.D. Pa. 2016); *Opris*, 2022 WL 1639417, at *14.

This case falls into the latter category. Plaintiffs' requests for declaratory and injunctive relief overlap substantially with their surviving negligence claim, but they also seek forward-looking relief concerning Rivers's ongoing obligations to safeguard Plaintiffs' personal information. Whether Rivers continues to owe those obligations, whether it has remedied any alleged deficiencies in its data-security practices, and whether equitable relief remains appropriate depend on a factual record that the Parties have not yet developed. At this stage, dismissing Plaintiffs' requests for declaratory and injunctive relief would prematurely curtail my ability to fashion complete equitable relief should Plaintiffs ultimately prevail. I therefore decline to dismiss those requests. *See Wawa*, 2021 WL 1818494, at *8; *Opris*, 2022 WL 1639417, at *14.

20

## IV.    CONCLUSION

Plaintiffs have plausibly alleged that Rivers failed to exercise reasonable care in safeguarding their personal information. Those allegations state a claim for negligence. Plaintiffs have not, however, plausibly alleged the additional elements necessary to support their remaining causes of action, many of which effectively would create liability just due to the fact of the data breach. I will therefore deny Rivers' Motion to Dismiss as to Plaintiffs' negligence claim and grant it in all other respects. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

August 7, 2026